UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| DONALDSON COMPANY, INC., | Case No. 09-CV-1049 (PJS/AJB) |
| Plaintiff, | |
| v. | *MARKMAN* ORDER |
| BALDWIN FILTERS, INC., | |
| Defendant. | |

---

David J.F. Gross, Theodore M. Budd, Kevin P. Wagner, Chad Drown, Jared B. Briant, Jeya Paul, Elizabeth Cowan Wright, and Andrew F. Johnson, FAEGRE & BENSON, LLP, for plaintiff.

Mark A. Pals, Ann Marie T. Wahls, Paul R. Steadman, Scott S. Evans, and Thomas W. Osier, KIRKLAND & ELLIS LLP; Lora Mitchell Friedemann, FREDRIKSON & BYRON, PA, for defendant.

This matter is before the Court for construction, in accordance with *Markman v. Westview Instruments, Inc.,* of certain terms found in the claims of six patents. 517 U.S. 370, 390-91 (1996). Five of these patents — U.S. Patent Nos. 6,190,432; 6,350,291; 6,610,117; 6,783,565; and 7,303,604 (collectively, "the '432-family patents") — descend from a common parent application. The sixth patent — U.S. Patent No. 6,517,598 ("the '598 patent") — descends from a different application. A seventh patent — U.S. Patent No. 7,329,326 ("the '326 patent") — is at issue in this litigation, but the parties have not asked the Court to construe any terms in that patent.

The parties prepared a joint claim-construction statement ("JCCS"), and each side submitted two briefs (opening and response) on claim-construction issues. The Court held a *Markman* hearing on May 9, 2011.

## I.  BACKGROUND

Plaintiff Donaldson Company, Inc. ("Donaldson") brings suit against defendant Baldwin Filters, Inc. ("Baldwin") for infringement of the '432-family patents, the '598 patent, and the '326 patent. The '432-family patents and the '598 patent cover a type of air filter and various air-filter-related methods. The '326 patent covers a method for making a type of filter medium for use inside of air filters. The devices and methods claimed in the '432-family patents were invented by Steven Scott Gieseke and Carolyn J. Finnerty. Gieseke is also an inventor (along with two other people) of the device and methods claimed in the '598 patent. Gieseke is not among the ten inventors named in the '326 patent. All of the patents are owned by Donaldson.

Roughly speaking, the patents-in-suit relate to cylindrical or oblong air filters made of "fluted media" — namely, rolled-up sheets of a filter medium that resembles corrugated cardboard. One side of the corrugations is open at the inlet end of the filter and closed at the outlet end, while the other side of the corrugations is closed at the inlet end and open at the outlet end. Air to be filtered thus flows in one side of the corrugations (the side open at the inlet end), passes through the interior surface of the corrugated material, and exits through the other side of the corrugations (the side open at the outlet end). The claimed air filters include a circular (or oblong) sealing surface that mates with a housing, creating a seal so that air to be filtered cannot bypass the filter.

Donaldson makes filters covered by the patent that are used in the engine systems of commercial trucks.  Baldwin makes filters that are designed to be suitable as aftermarket replacements for Donaldson filters.

## II.  GENERAL PRINCIPLES

Courts, not juries, construe patent claims.  *Markman*, 517 U.S. at 391.  Language in a particular claim must be construed in the context of both that individual claim and the entire patent, including the specification.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc).  Indeed, the specification, read in light of the prosecution history, is the primary basis for construing patent claims.  *Id.* at 1315.  Generally, the prosecution history of each patent in a family of patents is relevant to construing the claims of all patents in that family.  *See, e.g.*, *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1293 (Fed. Cir. 2005) ("Because [the] patents all derive from the same parent application and share many common terms, we must interpret the claims consistently across all asserted patents.").

Courts may also rely on "extrinsic evidence" — anything other than the patent and its prosecution history — but that evidence is secondary to the intrinsic evidence.  *Phillips*, 415 F.3d at 1317.  In general, claim language means whatever it would have meant, ordinarily and customarily, to a person of ordinary skill in the relevant art at the time the patent application was filed.  *Id.* at 1312-13.  In some cases, the ordinary and customary meaning of claim language to a person of ordinary skill in the art may be identical to the meaning of that language to a lay person who is not skilled in the art.  *Id.* at 1314.

### III.  CLAIM CONSTRUCTION

The parties have not argued that someone of ordinary skill in the art would interpret any of the disputed language differently than would an educated lay person.  Indeed, the parties have not even attempted to describe the characteristics of a person of ordinary skill in the art.  The parties' claim-construction arguments, far from being based on specialized knowledge, focus on the patents themselves, the patents' prosecution histories, other patents for similar devices, and definitions from general-purpose dictionaries.  The Court therefore construes the terms as would an ordinary educated layperson who had access to the materials cited by the parties.

*A. "axial" and "axially"*

The Court finds that it need not construe the related terms "axial" and "axially" in the '432-family patents and the '598 patent.  These terms have their ordinary meaning, and the Court finds that paraphrasing or restating that ordinary meaning would not be helpful and is not necessary.

Certain claims of the patents-in-suit require a sealing surface that is supported by an extension that projects "axially" with respect to the filter's surface.  Baldwin argues that to project "axially" (or to be an "axial extension") means to project "in a direction *parallel to* the longitudinal axis" of a filter.  Baldwin Opening *Markman* Br. at 10 [Docket No. 95] (emphasis added).  And although Baldwin does not explicitly say this in its *Markman* briefs, Baldwin further believes — as shown by its arguments at the *Markman* hearing — that "parallel" means, in effect, "*exactly* parallel (except for manufacturing tolerances or a minor draft angle)."  Whether "parallel" has this meaning is debatable, but the Court need not decide the question, for

the Court rejects Baldwin's attempt to insert the word "parallel" into claim language that is sufficiently clear as it is written.

Baldwin's claim-construction argument rests primarily on a single phrase used by the patentee during prosecution of the '432 patent. In describing the claimed filter element in an amendment submitted in response to an office action, the patentee said that the extension supporting the seal member "projects in a direction that is axial with respect to the flow face . . . . [i]n other words, the extension . . . extends in a same direction as a central longitudinal axis of the filter element itself."[1] Budd Decl. Repl. Ex. 26 at 4 [Docket No. 102-1]. According to Baldwin, through this phrase, the patentee "clearly and unambiguously defined" the word "axial." Baldwin Opening *Markman* Br. at 16.

The Court agrees with Baldwin that the patentee defined "axial" when he told the patent examiner that "axial" meant "[i]n other words . . . in a same direction as a central longitudinal axis of the filter element itself." That is how the phrase "in other words" works — it introduces a definition. But Baldwin has not explained why "in a same direction as" (the patentee's *actual* words) is the same thing as "parallel to" (*Baldwin's* words). To persuade the Court that "in a

---

[1]Slight variations on this phrase appear throughout the amendment. Budd Decl. Repl. Ex. 26 at 4 ("The extension 663 is projecting in a same direction as a central longitudinal axis . . . ."); *id.* ("The frame arrangement is recited as including an extension projecting axially from one of the first and second flow faces and in a same direction as the longitudinal axis."); *id.* at 6 ("The frame arrangement is required to include an extension projecting axially from one of the first and second flow faces and in a same direction as the longitudinal axis."); *id.* at 7 ("The frame construction is required to include an extension projecting axially from one of the first and second flow faces and in a same direction as the longitudinal axis.").

Further, through the amendment, the inventor amended claims 1, 12, and 20 to add language requiring a "longitudinal axis" of the filter medium and an extension "projecting axially . . . and in a same direction as" the longitudinal axis." *Id.* at 2-3.

same direction as" is identical to "parallel to," Baldwin must do more than simply assert their equivalence.

Baldwin offers only one scrap of evidence that supports equating "in a same direction as" and "parallel to": deposition testimony from Wayne Bishop, one of the '598 patent's inventors. Bishop replied "Yes" when asked, "Is it your understanding that 'axial' . . . means that the direction of the extension is parallel to a line from the inlet face to the outlet face of the main filter cartridge?"  Bishop Dep. at 26:17-25, Pals Decl. Ex. N [Docket No. 92-14].  This piece of extrinsic evidence is not sufficient reason to substitute the word "parallel" for the word "axial," which is already sufficiently clear.

The Court also rejects Baldwin's argument that "in a same direction as" must somehow be equated to "parallel to" because of the patentee's discussion of U.S. Patent No. 5,755,843 to Sundquist.  In the course of prosecution, in the same amendment in which the patentee said that an axial extension "extends in a same direction as a central longitudinal axis of the filter element itself," the patentee argued that Sundquist was distinguishable from the patentee's claimed invention because the seal at one end of the air filter disclosed in Sundquist is on a flange that "is illustrated as extending in a direction that is not axial with respect to the filter element."  Budd Decl. Repl. Ex. 26 at 6.  "Rather," said the patentee, the flange supporting the seal in Sundquist "is extending in a radial direction with respect to the filter element." *Id.*

The Court has reviewed Sundquist, and the patentee accurately described the relationship between the flange and the filter element disclosed in Sundquist.  It is true, as Baldwin's counsel pointed out at oral argument, that the flange disclosed in Sundquist extends in the same direction as the *air intake* — but the air intake in Sundquist is perpendicular to the axis of the filter

element itself. Thus, in Sundquist, air enters around the outside surface of a cylindrical filter, passes through the cylinder's outside surface for filtering, and then exits as filtered air through the cylinder's interior lumen. When the patentee said that the flange in Sundquist was "radial" and "not axial with respect to the *filter element*" in Sundquist, the patentee was using both "axial" and "radial" in their ordinary senses. Nothing about the patentee's discussion of Sundquist supports construing "axial" to mean "exactly parallel to an axis."

B. "extension"

The parties purport to agree on how to construe the word "extension" in the phrase "axial extension" and its variants. They propose that the Court construe "extension" to mean "a portion of the frame arrangement/construction." JCCS at 3 [Docket No. 84]. For several reasons, the Court rejects the parties' proposed construction and directs the parties to submit further briefing with respect to this term.

To begin with, the parties' proposed construction is actually less helpful than the word "extension" standing alone. If "extension" means simply "a portion of the frame arrangement," then *every portion* of the frame arrangement is potentially an "extension." Yet the frame arrangement may include, for instance, cross braces, each of which is "a portion of the frame arrangement" but does not appear to be an "extension" as that term is used in the patent's claims. *See* '432 Pat. col. 7:25 ("Cross braces 210 support the frame 205."); *id.* col. 6:51-52 ("[T]he frame construction 170 will include a frame 205."); *id.* fig. 4 (depicting frame construction 170 as including frame 205 and cross braces 210).

To take another example, the '432 patent describes the "frame construction 170" of an embodiment as including a "rigid projection 174." '432 Pat. col. 5:63-64. The patent then

describes "projection 174" as including three separately identified portions: (1) "a tip portion 263, or annular sealing support," *id.* col. 7:30-31; (2) a "depending lip 251," *id.* col. 7:35; and (3) "[b]etween the tip portion 263 and the depending lip 251 . . . a step 253," *id.* col. 7:34-36. As figures 5, 6, and 9 show, the depending lip, the step, and the tip portion are parts of the outer circumference of the frame arrangement — i.e., of the portion of the frame arrangement that surrounds the outlet face of the filter element. The depending lip extends axially alongside the filter element and below its outlet face; the step extends inward at an angle, toward the center of the filter element and in the direction of the outflow; and the tip portion extends axially above the outlet face of the filter element, in the direction of the outflow, and supports a seal member.

Every one of these three items — the depending lip, the step, and the tip portion — is "a portion of the frame arrangement" and thus could, according to the parties' agreed-upon construction, be an "extension" as claimed in the patent. But the Court doubts that these three items should, in fact, all be considered "extensions."[2]

More important, as the parties' *Markman* arguments made clear, the parties have a genuine disagreement over what should be considered an "extension." For its part, Baldwin seems to take the position that to be an "extension," something must be "axial." When the Court repeatedly pressed Baldwin's counsel at oral argument to say whether a portion of an illustrative seal support drawn by the Court was an "extension," counsel responded, in effect, "It depends on whether a large-enough portion of the seal support is axial." The flaw in this argument is readily apparent.

---

[2] In communicating with the patent examiner, the patentee referred to "extension 263" — that is, he called the "tip portion" the "extension." Budd Decl. Repl. Ex. 26 at 4.

Suppose a patent claims a wool blanket. Now suppose the patentee sues a maker of cotton blankets for infringing the patent. The cotton-blanket maker could legitimately defend himself by saying, "Yes, I make blankets — but they are cotton, not wool, and therefore do not infringe." The cotton-blanket maker could *not* legitimately defend himself by saying, "These things I make are not blankets because they are not wool." Whether something is a blanket is a separate question from whether something is made of wool. Likewise, whether something is an "extension" is a separate question from whether something is "axial."

Further, Baldwin and Donaldson seem to take different positions as to which portion of the frame arrangement in the accused device qualifies as an "extension." The accused Baldwin filter includes a circular seal support shaped, in cross-section, like a sideways letter V.[3] *See* Baldwin Opening *Markman* Br. at 12 (depicting seal support). Donaldson argues that the claimed "extension" is a seal support as a whole. Donaldson Resp. Claim Const. Br. at 8 [Docket No. 99] ("Donaldson chose to claim an extension that projects axially *as a whole*." (emphasis in original)). Thus, according to Donaldson, the accused seal support (taken as a unit) is an "axial extension," even though it is made up of two linear elements, each of which (taken individually) is angled (or canted) along a line that is in between axial and radial. *Id.* at 9 ("[E]ven if Baldwin's original 'parallel' construction is adopted, Baldwin's accused products are

---

[3]Using greater-than and less-than signs to represent the seal support in cross-section, the seal support's relation to the filter element can be represented schematically as follows:

[direction of filter outflow]

[filter periphery] > [filter axis] < [filter periphery]

filter element

[direction of filter inflow]

still covered by the claim language."); Donaldson Opening Claim Constr. Br. at 14 [Docket No. 93] ("[T]he frame arrangement of the [accused] products has at least a 'portion' that projects from the flow face in a direction parallel to the longitudinal axis, whether that 'portion' be the canted extension as a whole or some 'portion' thereof.").

Baldwin, however, argues that the seal support should not be looked at as a whole. At oral argument, Baldwin's counsel repeatedly said that whether a structure was an "axial extension" depended on whether some *portion* of the structure extended axially. Baldwin's counsel also said that a seal support in its entirety could not be considered an extension. Yet under the parties' agreed-upon construction, a seal support in its entirety indisputably qualifies as an "extension," because the entire seal support is "a portion of the frame arrangement."

In short, the parties have a disagreement about what "extension" means — a disagreement that is masked by their willingness to construe "extension" as "a portion of the frame arrangement." If this case went to trial tomorrow, Donaldson would say that the angular seal support in the accused Baldwin filter is an "extension," and that the extension is "axial" because it projects, as a whole, in the same direction as the axis of the filter element. Baldwin would respond that the seal support as a whole is not an "extension" and then argue that no individual portion of the seal support is "axial," so the accused device lacks an "axial extension."

To decide between these two positions, a jury would have to decide what an "extension" is: Is an "extension" (as per Donaldson) the seal support as a whole, or is it (as per Baldwin) some smaller portion of the seal support? To answer this question, the jury would have to know what the word "extension" means — a matter of claim construction that the parties' agreed-upon

construction does nothing to resolve. The Court will therefore invite further argument from the parties as to the meaning of the term "extension" (unmodified by the separate term "axial").

### C. "secured to"

The Court finds that it need not construe the term "secured to" in the '598 patent. This term has its ordinary meaning, and the Court finds that paraphrasing or restating that ordinary meaning would not be helpful and is not necessary.

Claim 1 of the '598 patent covers a filter element with "a mounting flange secured to" the filter media's first end. Claim 5 of the '598 patent covers a filter element with a band "circumscribing and being secured to" the outer surface of the filter media. The words "secured to" in these claims are ordinary words, used in their ordinary sense.

Baldwin first proposed construing "secured to" to mean "fixed to." JCCS at 13, 16. Baldwin subsequently proposed further construing "secured to" in claim 1 negatively, so that "secured to" would *not* mean "merely held in place at, but not fixed to" the filter media's first end. Baldwin Opening *Markman* Br. at 23. Baldwin seems to assume that "fixed to" means "attached directly to."

Much of Baldwin's argument is directed against Donaldson's alternative proposed construction of "secured to" to mean "held in place at." *Id.* at 25-26. This argument is largely beside the point, as Donaldson's primary proposed construction is no construction at all. JCCS at 13, 16.

The basis of Baldwin's argument — and of Baldwin's proposed negative construction of "secured to" to exclude "merely held in place at, but not fixed to" — seems to be Baldwin's belief that item A is "secured to" the end of item B only if item A is glued, bonded, stapled,

sewn, or otherwise *directly* attached to the end of item B. But this is not the ordinary meaning of "secured to," and Baldwin has provided no support for deviating from the ordinary meaning of "secured to."

A simple example shows why "secured to" is not as narrow as Baldwin believes: An Easter bonnet could be "secured to" the top of a child's head directly, with bobby pins. Alternatively, an Easter bonnet could be "secured to" the top of a child's head indirectly, by means of an elastic strap running beneath the child's chin, pulling the bonnet down.

The Easter bonnet would apparently be "fixed to" the child's head under Baldwin's proposed construction in the first instance, when bobby pins are used to attach the bonnet to the hair on top of the child's head — but not in the second instance, when an elastic strap exerts force on the child's chin to hold the bonnet to the top of the child's head. Yet an ordinary person would say that the bonnet is "secured to" the top of the child's head in both instances. More generally, two things can be "secured to" each other not just directly (as Baldwin seems to believe) but also indirectly (as this Easter-bonnet example shows).

The Court rejects Baldwin's argument that the patentee gave "secured to" some special meaning when he distinguished U.S. Patent No. 6,348,085 to Tokar et al. during prosecution. Tokar depicts a cylindrical filter with a mounting flange running around the filter and positioned in between the cylinder's two ends. The patentee said that Tokar showed a mounting flange "secured in a portion between the ends of" the cylindrical filter medium, whereas the patentee's amended claims were drawn to a device with a mounting flange "secured to the first end" of a cylindrical filter medium. Pals Decl. Ex. W at 8 [Docket No. 92-23 at 9].

Nothing about the patentee's discussion of Tokar suggests that "secured to" should have some special meaning. The most striking difference between Tokar and the patentee's claimed invention — and the difference that the patentee emphasized by saying that Tokar's mounting flange was "secured in a portion between the ends of" the filter medium — is the mounting flange's *location*, not the mounting flange's *point of attachment.*

Baldwin's argument would make sense only if the record were different. Suppose Tokar's mounting flange was located toward one end of the filter element, in the same location as the patentee's mounting flange. Suppose, further, that Tokar's mounting flange was not glued to the end of the filter element, but instead was attached to a sleeve, and that sleeve was glued to the middle of the filter element (as in Baldwin's accused device). Finally, suppose that to distinguish this imaginary Tokar device, the patentee had said, "It is true that Tokar discloses a flange located in the same area of the filter element as the flange in my claimed invention — but the flange in Tokar is *secured to* the middle of the filter element (via the sleeve), whereas my invention is *secured to* the end of the filter element (via adhesive or some other means)." On such a record, the Court would likely find that the term "secured to" had a specialized meaning similar to the meaning that Baldwin ascribes to the term.

On the actual record, however, "secured to" has its ordinary meaning and does not require further construction.

### D. "frame"

The Court finds that it need not construe the term "frame" as used in the phrases "frame construction" and "frame arrangement" in the '432-family patents. The term "frame" has its

ordinary meaning, and the Court finds that paraphrasing or restating that ordinary meaning would not be helpful and is not necessary.

Various claims of the '432-family patents are directed to a "frame construction" or "frame arrangement." Donaldson argues that the Court should construe "frame construction" or "frame arrangement" to mean "an open structure for support or shape." Donaldson Opening Claim Constr. Br. at 28. Baldwin argues that "frame construction" and "frame arrangement" need not be construed, but that if they are, they should be construed to mean "support structure." Baldwin Opening *Markman* Br. at 38. The Court agrees with Baldwin that "frame" need not be construed.

Donaldson does not argue that "frame" has a specialized meaning in the '432-family patents. Rather, Donaldson says that frame "should carry its ordinary meaning of an "*open structure for support or shape*' . . . ." Donaldson Opening Claim Constr. Br. at 29 (emphasis in original). The Court agrees with Donaldson's premise — that "frame" has its ordinary meaning — but not with Donaldson's conclusion — that "frame" should be further construed.

If "frame" has its ordinary meaning (as Donaldson argues), why construe it further? There can be only one possible justification for further construing a term that has its ordinary meaning: such further construction would helpfully clarify that ordinary meaning for a jury. But construing "frame" to mean "an open structure for support or shape" merely trades one question — is something a "frame" in the word's ordinary sense? — for another, equally uncertain question — is something sufficiently "open" to be considered "an open structure"?

Notably, the term "frame" is not prefaced by any modifier in the '432-family patents: The patents do not claim a "skeletal" frame or an "open" frame. And while it is true, as

Donaldson points out, that the frames depicted in the patent drawings are all "open," this fact is of little significance, as the Court must not limit claim language to a patentee's preferred embodiments. *See, e.g., Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1122 (Fed. Cir. 2004) ("[T]he law does not require the court, where an applicant describes only a single embodiment, to construe the claims as limited to that one embodiment. Indeed, such a construction is not encouraged or presumed.") (citations omitted).

In short, construing "frame" to mean "open structure for support or shape" does not clarify the claim language or otherwise simplify the jury's task. If this case goes to trial, a jury will have to decide, based on testimony from persons of ordinary skill in the art, whether an accused device includes a "frame" as that word is ordinarily used. It would serve no purpose to ask the jury to decide instead, based on testimony from the same persons of ordinary skill in the art, whether a support structure in the accused device is "open" as that word is ordinarily used.

### E. Indefiniteness

Five claims in three of the '432-family patents include language directed to a "seal member" with a sealing surface "oriented to form" (or "supported . . . to provide") a "releasable, peripherally directed seal" — that is, a radial seal (as opposed to an axial seal).[4] Baldwin makes

---

[4]The claims at issue are: claim 1 of U.S. Patent No. 6,350,291 (claiming a "seal member peripheral sealing surface being oriented to form a releasable, peripherally directed, seal between the filter element arrangement and a housing internal annular sealing surface"); claim 1 of U.S. Patent No. 6,610,117 (claiming a "seal member oriented . . . to form a releasable, peripherally directed seal between the filter element arrangement and a housing internal annular sealing surface"); claim 10 of U.S. Patent No. 7,303,604 (claiming a "seal member being supported . . . to provide a releasable, peripherally directed seal with a housing sealing surface"); claim 18 of U.S. Patent No. 7,303,604 (claiming a "seal member being oriented to form a releasable, peripherally directed seal with a housing sealing surface"); and claim 31 of U.S. Patent No. 7,303,604 (claiming a "seal member . . . oriented to form a releasable, peripherally directed seal
(continued...)

two arguments with respect to these claims. First, Baldwin argues that the claims should be construed so that a housing is a claim limitation. Second, Baldwin argues that if a housing is *not* a claim limitation, then the claims are indefinite and therefore invalid.

Baldwin has waived the first argument — that a housing is a claim limitation — by failing to raise it until oral argument on claim construction. As Baldwin well knows, whether a term in a claim's preamble should be considered a claim limitation is a question of claim construction. *See Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 951-52 (Fed. Cir. 2006); *Toro Co. v. Textron, Inc.*, 502 F. Supp. 2d 904, 907-08 (D. Minn. 2007).

But Baldwin did not assert in the parties' joint claim-construction statement that a housing was a limitation in the claims that Baldwin challenged as indefinite. JCCS at 11-13. Nor did Baldwin assert in either of its *Markman* briefs that a housing was a limitation in these claims. Instead, Baldwin said in its opening brief, "Donaldson contends that the housing is not a claim limitation," and Baldwin never challenged Donaldson's contention. Baldwin Opening *Markman* Br. at 30. Indeed, Baldwin implicitly *endorsed* Donaldson's contention when Baldwin said that "by *not claiming* a filter and a housing, Donaldson failed to provide enough information about the housing in the claim to allow one of ordinary skill in the art to determine whether a given filter would infringe based on the claim language[] itself." *Id.* at 31 (emphasis added). Baldwin further signaled that it was not itself arguing that the housing was a claim limitation when Baldwin said that "if *Donaldson* were to argue that the claimed filter arrangement includes

---

[4](...continued)
with a housing sealing surface").

The Court notes that the first two of these claims, which refer to an "internal annular sealing surface," appear to be more definite than the last three, which refer only to a "housing sealing surface" without specifying that the surface has any particular shape.

both a 'housing' and a filter, the accused Baldwin filters would not infringe . . . ." *Id.* at 31 n.12 (emphasis added). And in its responsive *Markman* brief, Baldwin continued to argue exclusively that the claims at issue were indefinite, not that they should be construed to include a housing as a claim limitation. Baldwin Resp. *Markman* Br. at 11-12 [Docket No. 101].

Baldwin had an adequate opportunity, in the joint claim-construction statement and the *Markman* briefing, to decide which claim-construction arguments to make and which to pass up. Baldwin chose not to argue that a housing was a claim limitation. Baldwin apparently changed its mind by the time of the claim-construction hearing. But a claim-construction hearing is not an opportunity for a party to revisit an earlier tactical decision and make, for the first time, arguments that the party should have made much earlier. To allow Baldwin to belatedly argue that a housing is a limitation would unfairly burden Donaldson, who was led by Baldwin's earlier actions to believe that this issue was not in play.

Turning to the merits, the Court cannot find by clear and convincing evidence, based on the current record, that the challenged claims are insolubly ambiguous and therefore invalid as indefinite. *See Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347-48 (Fed. Cir. 2005). Baldwin asked various witnesses at their depositions whether certain filters formed an axial or a radial seal with a housing, and the witnesses professed to be unable to answer the question without seeing the housing. *See* Baldwin Opening *Markman* Br. at 34-37 (citing deposition testimony). But the claim language that Baldwin challenges as indefinite calls for a "seal member" with a sealing surface "oriented to form" (or "supported . . . to provide") a "releasable, peripherally directed seal." Whether something is "*oriented* to form" a particular

type of seal is a different question from whether something *actually forms* a particular type of seal.

Of course, it could be that a person of ordinary skill in the art would answer these two questions — whether a filter is oriented to form a particular type of seal, and whether the filter in fact forms that type of seal — the same way. But the Court cannot simply assume that two different questions have the same answer. The Court therefore rejects, without prejudice, Baldwin's argument that the challenged claims are invalid as indefinite. Baldwin may raise this argument again at the summary-judgment stage if the record supports it.

ORDER

Based on the foregoing and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. The disputed claim language is construed as stated above.

2. To the extent that Baldwin's claim-construction argument with respect to indefiniteness can be construed as a motion for summary judgment of invalidity based on indefiniteness, the motion is DENIED WITHOUT PREJUDICE.

3. With respect to construing the claim term "extension" as used in the asserted claims, the Court seeks further argument from the parties as follows:

    a. Each party must file an initial supplemental claim-construction brief addressing the proper construction of the term "extension." The brief must be filed and served by June 20, 2011.

      b.      Each party must file a responsive supplemental claim-construction brief addressing the proper construction of the term "extension."  The brief must be filed and served by June 27, 2011.

      c.      Each party's initial brief and its responsive brief, taken together, must not exceed 5,000 words.

      d.      After receiving the initial and supplemental briefs, the Court will contact the parties if it decides to schedule a hearing on this issue.

Dated: June  6 , 2011

s/Patrick J. Schiltz  
Patrick J. Schiltz  
United States District Judge